Andreas, J. (dissenting).
Under the particular circumstances before us, Supreme Court did not exceed its authority and providently exercised its discretion when it dismissed both the action and third-party action on forum non conveniens grounds. Accordingly, I respectfully dissent.
Plaintiff, a United Arab Emirates (UAE) bank, is headquartered in Dubai and has a branch in New York. In 2009, it brought this action against defendant AJimed Hamad Al Gosaibi & Brothers Company (AHAB), a Saudi Arabian general partnership, seeking to recover, under the theories of breach of contract, *14 unjust enrichment and breach of implied duty of good faith and fair dealing, damages for AHAB’s default on a US dollars for Saudi Arabian riyals currency swap. Plaintiff alleges that it wired $150 million to AHAB’s account at the Bank of America in New York, but AHAB failed to wire the riyals to plaintiff. The funds in the Bank of America account were then transferred to an HSBC account in New York controlled by third-party defendant Maan Abdul Waheed Al Sanea (Al Sanea), a Saudi national and the head of operations of AHAB’s Money Exchange. Plaintiff filed an order of attachment against AHAB’s property in New York, but by that time Al Sanea had already transferred the funds to institutions outside New York.
AHAB answered and filed a third-party complaint against A1 Sanea and Awal Bank, a Bahrain bank that Al Sanea owned and controlled. AHAB alleged that the subject foreign exchange transaction was part of a massive fraudulent scheme perpetrated by Al Sanea through which he caused unauthorized borrowing of more than $10 billion in the name of AHAB and then siphoned the bulk of those funds into his own accounts or those of his companies, including Awal. Al Sanea allegedly used the fraudulent foreign exchange deals to hide disguised short term loans he obtained to keep his scheme going. AHAB also asserted counterclaims alleging that plaintiff aided and abetted Al Sanea in his fraudulent scheme and, as an affirmative defense, alleged that “[vjenue in this Court is improper.”
Al Sanea moved to dismiss the third-party complaint against himself and Awal pursuant to CPLR 327 (a) on forum non conveniens grounds. Plaintiff moved to dismiss the counterclaims on other grounds. After twice hearing oral argument, the court dismissed the complaint, counterclaims and third-party complaint on forum non conveniens grounds.
The majority believes that the motion court lacked the authority to dismiss the main action because no party formally moved to dismiss it on forum non conveniens grounds, and a court does not have authority to invoke the doctrine sua sponte (see VSL Corp. v Dunes Hotels & Casinos, 70 NY2d 948 [1988]; Todtman, Young, Tunick, Nachamie, Hendler, Spizz & Drogin v Richardson, 231 AD2d 1 [1997]). However, CPLR 327 (a) provides:
“When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or res *15 idence in this state of any party to the action shall not preclude the court from staying or dismissing the action” (emphasis added).
Here, unlike VSL Corp., where the Appellate Division dismissed the complaint sua sponte on forum non conveniens grounds, and Todtman, Young, where the defendants sought only to dismiss the complaint for lack of subject matter jurisdiction, the third-party defendant moved to dismiss the third-party action based on the doctrine. Further, “[although no formal motion was made to dismiss the [main action] on the ground of forum non conveniens, the doctrine was raised before the court, and the parties contested the matter” (Matter of Smith v Miller, 237 AD2d 294, 295 [1997]).
When the court heard argument on January 5, 2010, it immediately expressed its view that “if the motion to dismiss for forum non conveniens has . . . legs, it affects everything else” and stated that it wanted the issue fully briefed. While the majority contends that we are distorting the record of the proceeding below and that the court only scheduled briefing for Al Sanea’s motion to dismiss the third-party complaint, the majority is wrong. True, after the court first stated that it would have the forum non conveniens issue fully briefed, Al Sanea’s counsel stated, “It’s against AHAB,” and the court responded, “Right.” However, the court immediately clarified that “I want you to respond to a forum non conveniens argument because I am very, very concerned, if you will, that these cases do not belong here” (emphasis added). The court also made clear that even though no one had made a formal forum non conveniens motion against plaintiff, it wanted to hear from plaintiff on the issue and granted plaintiff’s request that it first see the third-party defendants’ reply before it submitted its papers.
At oral argument on March 25, 2010, third-party defendants, by counsel, reiterated their position that the court “would be well grounded in its discretion to dismiss the entire action.” Counsel noted that plaintiff had submitted supplemental papers stating:
“[plaintiff] does not dispute that the UAE . . . would be an adequate forum for litigating its first-party case against Ahab. Indeed, as explained in its prior brief, [plaintiff] has already commenced a breach of contract case in the UAE against Ahab and its partners, that encompasses a claim based on the foreign-exchange transaction at issue here. . . . *16 “Notably, neither Ahab nor its partners have contested the jurisdiction of the UAE courts as they have in this court in New York. For those reasons, and because it has been unable to locate any assets of Ahab or its partners in New York, [plaintiff] would not object to litigating its breach of contract claims against Ahab and the Ahab partners in the UAE in the event that this Court were to dismiss Ahab’s third party complaint” (emphasis added).
Plaintiffs counsel confirmed that this was in fact plaintiffs position and the court reiterated its view that there were two parts to the application, one for the third-party defendants to be “cut out,” and the other “to consider forum non conveniens as to everybody.” While counsel for the third-party plaintiff AHAB stated that he opposed both parts, he acknowledged that “our case against Al Sanea, is completely intertwined with our defense to the contract case that [plaintiff] has brought and also with our counterclaim.” Counsel did not argue that the court lacked the authority to dismiss the main action because no party had filed a formal motion seeking that relief.
Under these circumstances, where the third-party defendant moved to dismiss the third-party complaint on forum non conveniens grounds, placing the doctrine before the court, and the dismissal of the main action on that ground was addressed by the parties at oral argument, the court had discretion to dismiss the entire action in whole or in part, especially where AHAB’s third-party complaint, counterclaims and defense to the complaint are admittedly intertwined and plaintiff stated its position that if the third-party complaint was dismissed, the complaint should be dismissed as well (see Banco do Estado de Sao Paulo v Mendes Jr. Intl. Co., 249 AD2d 137, 139 [1998] [“Although plaintiff did not move for summary judgment on forum non conveniens grounds, and the court may not sua sponte invoke this basis for dismissal, forum non conveniens had been raised by plaintiff as an affirmative defense to the counterclaims and was a clearly articulated motif of plaintiffs arguments in the motion proceedings”] [citations omitted]; see Smith v Miller, 237 AD2d at 295).
The majority makes no attempt to distinguish Smith v Miller, and states that Banco do Estado is inapposite because there the issue of forum non conveniens was fully briefed. However, irrespective of the scope of the briefs submitted to the motion court, the salient point is that in both cases, although no formal mo *17 tion was made, the doctrine of forum non conveniens was squarely before the court and the parties had a full and fair opportunity to litigate the issue.
As set forth above, the record in this case clearly shows that all parties were made fully aware that the court was considering whether the main action should also be dismissed on forum non conveniens grounds and were given the opportunity to brief the issue, which they addressed at the second oral argument. While the majority emphasizes that plaintiff submitted papers opposing the motion to dismiss, it ignores the concessions plaintiffs counsel later made at the March 25, 2010 oral argument, and the fact that plaintiff has submitted a brief in support of the dismissal of the entire action on this appeal (see Ridge Meadows Homeowners’ Assn, v Tara Dev. Co., 242 AD2d 947 [1997]).
The majority also states that our view that “because [plaintiff] conceded that the UAE ‘would be an adequate forum’ [plaintiff] necessarily advocated for a forum non conveniens dismissal of its own case, is similarly without support in the record.” However, the record establishes that after the third-party defendants moved to dismiss the third-party complaint, and the court indicated its view that the entire case should be dismissed on that ground, plaintiff confirmed that it would not object to litigating its claims against defendant in the UAE in the event that the court dismissed the third-party complaint.
As to the merits, the common-law doctrine of forum non conveniens, codified in CPLR 327, permits a court to dismiss an action, when it finds that “in the interest of substantial justice the action should be heard in another forum” (CPLR 327 [a]). A motion to dismiss on the ground of forum non conveniens is subject to the discretion of the trial court, and “should turn on considerations of justice, fairness and convenience” (Silver v Great Am. Ins. Co., 29 NY2d 356, 361 [1972]). A court’s determination generally will not be disturbed on appeal unless the court has failed to properly consider and balance all of the relevant factors, which include the existence of an adequate alternative forum; situs of the underlying transaction; residency of the parties; the potential hardship to the defendant; location of documents; the location of a majority of the witnesses; and the burden on New York courts (see Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 479 [1984], cert denied 469 US 1108 [1985]). “No one factor is controlling,” and the “great advantage” of the doctrine is “its flexibility based upon the facts and circumstances of each case” (id.). If the balance of *18 conveniences indicates that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper (id.; see also Matter of New York City Asbestos Litig., 239 AD2d 303 [1997]).
Applying these principles, the motion court correctly considered and balanced the appropriate factors in finding that New York is an inconvenient forum for this dispute because it is between a foreign bank and foreign businesses, the alleged wrongdoing took place in foreign countries even though New York banks were its instrumentalities, documentary evidence and witnesses are located outside of New York, and the resolution likely requires the application of foreign law (see Islamic Republic of Iran v Pahlavi, 62 NY2d at 480; Kuwaiti Eng’g Group v Consortium of Intl. Consultants, LLC, 50 AD3d 599 [2008]; Garmendia v O’Neill, 46 AD3d 361, 362 [2007]). In reaching its conclusion that Supreme Court improvidently exercised its discretion in balancing the Pahlavi factors, the majority again gives short shrift to the facts that (1) the third-party defendant moved to dismiss the third-party complaint, which was based on Al Sanea’s alleged Ponzi scheme which originated in the Middle East, (2) the third-party plaintiff conceded at oral argument that “our case against AL Sanea, is completely intertwined with our defense to the contract case that [plaintiff] has brought and also with our counterclaim,” and (3) plaintiff, who now advocates for the dismissal of the entire action, represented to the motion court that it agreed that if the third-party complaint was dismissed on forum non conveniens grounds, the complaint should be dismissed on that ground as well.
Citing J. Zeevi & Sons v Grindlays Bank (Uganda) (37 NY2d 220 [1975], cert denied 423 US 866 [1975]), the majority also states that Supreme Court erred because “New York has a compelling interest in the protection of the native banking system from misfeasance or malfeasance.” However, the language which the dissent quotes from Zeevi in support of its position addressed choice-of-law issues, not forum non conveniens.
Further, while “[t]he doctrine [of forum non conveniens] rests, in large part, on considerations of public policy . . . our courts should not be under any compulsion to add to their heavy burdens by accepting jurisdiction of a cause of action having no substantial nexus with New York” (Silver v Great Am. Ins. Co., 29 NY2d at 361 [internal quotation marks omitted]). Thus, insofar as Zeevi stands for the premise that New York is a *19 “financial capital of the world” (37 NY2d at 227), and that the passage of global capital through New York requires that its courts be open to the settling of commercial disputes that are transacted here, “this principle is not without its limitations, and commercial disputes that are more fundamentally connected to other venues are more appropriately settled there” (Wilson v ImageSat Intl. N.V., 2008 WL 2851511, *7 n 13, 2008 US Dist LEXIS 57897, *26 n 13 [SD NY 2008]; see also Martin v Mieth, 35 NY2d 414, 418 [1974] [it is well settled that New York courts “need not entertain causes of action lacking a substantial nexus with New York”]; P.T. Delami Garment Indus, v Cassa di Risparmio di Torino, 164 Mise 2d 38 [Sup Ct, NY County 1994], affd World Point Trading PTE. v Crédito Italiano, 225 AD2d 153 [1996] [suit predicated on New York situs of issuer’s correspondent bank dismissed]).
Furthermore, in Zeevi, where Grindlays had anticipatorily breached its obligations under a letter of credit, there was a closer nexus to New York in that “New York was the locus of repudiation” of the instrument because the “defendant’s order countermanding payment by cable and letter took effect upon receipt by Citibank in New York and then gave rise to a cause of action here” (Zeevi, 37 NY2d at 226). Here, A1 Sanea’s alleged Ponzi scheme, perpetrated in the Middle East, is the dominant feature of AHAB’s defense to the complaint, counterclaim, and third-party complaint.
The majority also contends that the motion court erred “in not accepting as true AHAB’s allegations that Al Sanea used for its own purposes, and then looted, AHAB’s New York bank accounts.” However, the fact that the proceeds of A1 Sanea’s fraudulent scheme passed through the New York banking system is a peripheral and transitory contact, which, without more, does not give New York an interest in transactions that otherwise are foreign (see Calgarth Invs., Ltd. v Bank Saderat Iran, 1996 WL 204470, *6, 1996 US Dist LEXIS 5562, *20 [SD NY 1996], affd 108 F3d 329 [2d Cir 1997] [“(D)ebits and credits at New York bank accounts, without more, do not give New York or the United States an interest in transactions that otherwise are entirely foreign”]; Sussman v Bank of Israel, 801 F Supp 1068, 1074 [1992], affd 990 F2d 71 [2d Cir 1993] [bank’s “use of its New York branch ... to route the loan proceeds . . . cannot be regarded, in the overall scheme of things, as other than peripheral”]; Lan Assoc. XVIII, L.P. v Bank of Nova Scotia, 1997 WL 458753, *6, 1997 US Dist LEXIS 11931, *16 [SD NY 1997] *20 [“Were such a minimal contact with New York to be deemed significant, this Court, located in one of the world’s largest and busiest financial centers, would be burdened with countless international financial disputes having no real, substantive link to New York”]; see also Finance & Trading Ltd. v Rhodia S.A., 28 AD3d 346 [2006], lv denied 7 NY3d 706 [2006] [purported meetings in New York City between the defendants and the plaintiffs principal did not suffice to create substantial nexus with New York in that underlying transaction occurred primarily in foreign jurisdiction]). Accordingly, the judgment should be affirmed.
Abdus-Salaam and Manzanet-Daniels, JJ., concur with Catterson, J.; Mazzarelli, J.P., and Andrias, J., dissent in a separate opinion by Andrias, J.
Judgment, Supreme Court, New York County, entered August 11, 2010, reversed, on the law, with costs, the judgment vacated and the complaints reinstated. Appeal from the order, same court and Justice, entered July 29, 2010, dismissed, without costs, as subsumed in the appeal from the judgment.